## Commonwealth v. Fletcher et al.

Nov. 17, 1944.

586

Eldon S. Dummit, Attorney General, and Forest Hume, Assistant Attorney General, for appellant.

C. R. Luker for appellee.

OPINION OF THE COURT BY JUDGE SIMS—Affirming.

In an indictment returned by the grand jury of the Laurel Circuit Court the defendants Clarence Fletcher and S. G. Fletcher (commonly called Sherman) were charged with the felony of confederating or banding themselves together for the purpose of alarming, intimidating or disturbing Dutt Bolton, his wife and children, an offense denounced by KRS 437.110. At the conclusion of the Commonwealth's evidence the trial court sustained a defense motion to peremptorily instruct the jury to acquit defendants, and the Commonwealth appeals to have the law certified.

Clarence and Sherman Fletcher are cousins and it appears that Clarence resided near the home of the Bolton family in a remote section of Laurel County. He was on friendly terms with them and was paying court to their 14 year old daughter, Bonnie Mae, without objection from her parents. The record fails to reveal where Sherman resided, but it does show he was unknown to the Boltons until the night of the trouble.

Between 7 and 8 o'clock at night about a week before the grand jury convened on January 5, 1944, Clarence was heard on a hill behind the Bolton home and some shots were fired. Presently, he came to the kitchen door and fired a shot into the Bolton house. Dutt Bolton went to the back door of the house to investigate and while he was doing that, Clarence went around to the front and shouted, "Open the door, or I will kick it down." Thereupon Bonnie Mae, at her mother's suggestion, went to the front door to unlatch it. As she put her hand on the latch Clarence fired through the door and shot her in the hand. He then entered the house, emptied his pistol by firing several shots into the floor and slumped down in a drunken stupor. Dutt disarmed Clarence when the latter fell on the floor and in the course of a half an hour Clarence's father came after him, and he and Dutt took Clarence home.

Sherman was drunk but was not wild like Clarence. While the shooting was in progress, he entered the Bolton house through the kitchen, exclaiming, "Let me in there and I will stop him"; but the firing ceased at

about the time he entered the house. The pistol Clarence was firing belonged to Sherman who had 15 or 20 cartridges in his pocket which he handed to Mrs. Bolton when the shooting stopped. Sherman helped "cord" Bonnie Mae's hand, supplied the money to take her to the doctor and remained quietly in the home with Mrs. Bolton and her younger children while Dutt took the wounded girl to London to have a doctor dress her hand. A deputy sheriff who returned with Dutt and his daughter arrested Sherman and then went to Clarence's home, found him in bed drunk and arrested him.

The familiar rule is, "a confederation or a conspiracy may be established by the acts, conduct, or declarations of the participants or by facts or circumstances, but it may not be established by mere suspicion nor by association of the parties." Smith v. Com., 270 Ky. 367, 109 S. W. 2d 836, 838; Sexton v. Com., 262 Ky. 636, 90 S. W. 2d 999. It was written in Glass v. Com., 249 Ky. 757, 61 S. W. 2d 629, 630, "a conspiracy is almost necessarily established by a welding into one chain circumstances which, when considered separately, are of themselves insufficient and inconclusive, but, when connected and examined as a whole, are sufficient to show it."

From the above resume of the evidence it is apparent that it does not tend to prove Clarence and Sherman agreed to commit this crime prior to the shooting; nor was there proof of any chain of circumstances tending to show they confederated themselves together to perpetrate it. The fact that Clarence used Sherman's pistol, that the two were together and that Sherman had cartridges in his pocket of the same caliber as the pistol, standing alone, is not evidence of a conspiracy, and the court properly directed a verdict in favor of both defendants. The two men were drunk and Clarence appears to have surrendered to a wild desire to fire the pistol without regard for the consequences, while Sherman expressed an intention to stop him. But there is nothing in the record to even intimate that they entered into a conspiracy to disturb or harm any member of the Bolton family, or that Sherman aided, advised or encouraged Clarence so to do. The facts in this case are somewhat similar to Johnson v. Com., 295 Ky. 520, 174 S. W. 2d 769, wherein it was written there was no proof of conspiracy although

Johnson's codefendant fired Johnson's pistol in a church for the purpose of alarming the congregation.

The indictment charged defendants with confederating and banding together for the purpose of intimidating, alarming or injuring Dutt Bolton and his family, and it averred that in pursuance thereof they went forth and executed the conspiracy by shooting into Bolton's home and wounding his daughter. An indictment charging conspiracy under KRS 437.110 is sufficient without averring that the conspiracy was actually consummated, since the acts committed pursuant to the conspiracy are immaterial and the offense is completed when the conspiracy is formed. The averment in the indictment that the conspiracy was executed is surplusage. Com. v. Barnett, 196 Ky. 731, 245 S. W. 874; York v. Com., 285 Ky. 492, 148 S. W. 2d 337.

It is argued in the brief for the Commonwealth that if a case of "banding and confederating" was not made against defendants, the court should have instructed under KRS 435.170, which makes it a felony punishable by confinement in the penitentiary not less than 2 years nor more than 21 years to maliciously shoot into a dwelling house. There are two reasons why the court could not so instruct: First, the crime defined in KRS 435.170 is not a degree of that condemned in KRS 437.110, under which the indictment was returned; second, if it were, it is a higher degree since it provides a heavier penalty, and section 262 of the Criminal Code of Practice is to the effect that where an offense consists of different degrees, the accused may not be convicted of a degree higher than that charged in the indictment.

There are no degrees in the crime of conspiracy under KRS 437.110. Slaven v. Com., 197 Ky. 790, 248 S. W. 214; Cobb v. Com., 242 Ky. 424, 46 S. W. 2d 776. In Smith v. Com., 270 Ky. 367, 109 S. W. 2d 836, the indictment was returned under KS 1241a-1 (now KRS 437.110) and the opinion recites that the two defendants were clearly guilty of a breach of the peace and one of them was guilty of intentionally shooting at another without wounding, but they were "neither indicted nor tried for either of those offenses, and their possible guilt of either of them cannot be considered on the trial of the instant indictment."

But the present indictment charged only a conspir-

acy to alarm, intimidate or injure Dutt Bolton, or members of his family, and an acquittal of the defendants on that charge does not bar a subsequent indictment charging them with shooting and wounding Bonnie Mae or with shooting into the Bolton house, as neither offense is any degree of the crime of "banding or confederating" for which defendants were indicted and tried. Burdue v. Com., 144 Ky. 428, 138 S. W. 296. However, it may not be amiss to say that if such an indictment be returned and if the evidence is substantially the same on a subsequent trial, it will not suffice to sustain a conviction against Sherman as an aider and abettor since the record before us fails to reveal that he had any connection with the shooting.

While the officers were taking defendants to jail on the night of the shooting, Clarence volunteered the information without a question being asked him that he did not intend to harm the girl but he went there drunk to kill her father and that he would return while sober and "get him." Such statement throws no light on the question of whether defendants had "banded and confederated together" and the court did not err in excluding it. This testimony will be competent to show motive if Clarence is indicted and tried for the actual shooting.

The judgment is affirmed and this opinion is certified as the law.